## ESTATE of FREDERICK KOHNE, deceased.

The phrases *arrive at twenty-one years*, and *arrive at full age*, are synonymous, and convey to the mind identically the same idea, on any question arising among our own citizens. Such being the law, the consequence is that the period for division is when the youngest arrives at the age of twenty-one years.

A minor actually domiciled in a foreign country, and who is by the law of that country legally incapable of executing any instrument having any legal value there, cannot execute therein such an instrument legally efficacious on his personal property in this Commonwealth.

With but few exceptions, a person who has attained his age of majority by the laws of his native domicile, is to be deemed everywhere of the same; on the other hand, a person who is in his minority by the laws of his native domicile, is to be deemed everywhere in the same state and condition.

This is the rule as to personal property. *Secus* as to land. This is regulated by the laws of *its situs*.

The acts of a person done in the place of his domicile in regard to property situated therein, which are to be judged of by the laws of this place, will not be permitted to have any legal effect elsewhere, other than what they have at the place of the domicile.

Personal property always follows *the situs* of the owner. Contracts are to be performed according to the laws of the place where they are made. When a minor has not reached the age of majority in the country where she is domiciled, she cannot execute a power of attorney to do acts in a state, or country, where by the laws of that state a minor obtains her majority at an earlier age.

*Jan.* 13. THIS was a petition presented in the Orphans' Court by Frederick Fontain, Wilhelm Fontain, Albertine Marie Louise Fontain, and Henrietta Catherina Fontain, by their attorney in fact, John C. Lang.

It set forth that one Frederick Kohne, late of the city of Philadelphia, in his lifetime, to wit, on the 28th day of April, A. D. 1829, made his last will and testament, and on the 26th day of May following departed this life, leaving said will unrevoked, and that the same was afterwards duly proved before the Register of Wills, &c., for said city and county, to whom jurisdiction belonged; and that Eliza Kohne, John Bohlen, Robert Vaux, and Robert Maxwell, the executors therein named, were duly qualified, and took upon themselves the burthen of the execution thereof. That among the bequests in said will, the testator made the following, viz. "I give and bequeath unto my nephew, Moritz William Fontain, residing at Rheda, in Westphalia, in Germany, the interest of all my Ohio six per cent. Canal Loan, accruing for, and during all, the term of his life, to be paid to him when and as the same shall be received by my executors, excepting thereout the annual sum of three thousand dollars thereof, yearly and every year until

the youngest child living of my said nephew shall arrive at the age of twenty-one years; which annual sums shall, with all accumulations of interest arising from that source, be yearly invested in the purchase of the like stocks, or in some of the public stocks or funds of the United States, or the state of Pennsylvania, or any other state or states of the United States, or of the city of Philadelphia, bearing an interest, as they my said executors in their discretion may see fit; which annual sums, and all accumulations thereof, I direct, shall on the youngest child living of my said nephew arriving at full age, be equally divided to and amongst the children of my said nephew then living, and the issue of such of them as may then be dead, in equal parts; such issue to be entitled equally among themselves to such part and share only as their deceased parents could have taken if living." That, after the probate of said will, said executors proceeded to execute the trust declared in the above-recited provision thereof. That the said Moritz William Fontain had, at the time of the testator's decease, five children, viz. Frederick Fontain, Wilhelm Fontain, Albertine Marie Louise Fontain, and Henrietta Catherina Fontain, who are parties to this petition, and Arnold Fontain, who died without having been married, on the 28th day of January, 1841; the other four are yet living, and are parties to this petition, the daughters not having married; the said Moritz William Fontain has had no other children, and your petitioners, the said Frederick, Wilhelm, Albertine Marie Louise, and Henrietta Catherina, answer the description by which the beneficiaries, among whom the said three thousand dollars, and the accretions thereof, are to be divided, are designated in said above-recited provisions of said will. And your petitioners further state, that the said Henrietta Catherina Fontain, who is the youngest child of the said Moritz William Fontain, attained the age of twenty-one years on the eleventh day of January, in the year one thousand eight hundred and forty-nine, and that therefore the said fund and its accumulations became on that day distributable among the said four children of the said Moritz William Fontain, who are parties to this petition, according to the directions of the said will; and your petitioners, in corroboration and proof of the facts above stated in regard to the family of the said Moritz William Fontain, hereto annex a schedule of properly authenticated certificates, marked A., which they make part and parcel of this their petition. And it was further averred in the petition that John Bohlen, one of the above-named executors of said will of Frederick Kohne, Eliza Kohne, the execu-

trix, being absent from the state, and the other said executors named in the will being deceased, filed an account on the 2d day of March, 1849, in the office of the Register of Wills for said city and county, being an account of the annual sum of three thousand dollars, directed by the will of said Frederick Kohne to be taken out of his bequest to his nephew, Moritz William Fontain, of the interest on his Ohio six per cent. loan, yearly and every year, until the youngest child of his said nephew shall arrive at the age of twenty-one years, and to be invested with all accumulation of interest arising from that source, &c. The petition stated that this account had been duly confirmed by the Orphans' Court of said county, and that the balance on hand for distribution, on the 2d day of March, 1849, was *eighty-nine thousand three hundred and seventy-seven dollars, and twenty-eight cents.* A reference was made to the account, and prayed a decree that the surviving executors should pay over to the petitioners in equal amounts the sum thus stated in said account.

To the petition thus presented, Eliza Kohne and John Bohlen, the surviving executors, filed an answer, in which they admitted all the facts set forth in said petition, as to the age of the parties, their description, and right to take the legacy, the filing of said account, and the amount in their hands for distribution, and, in short, every fact averred therein; but concluded the answer with this submission: "that the respondents cannot gainsay the prayer of said petition except by submitting to your honourable Court certain facts, and asking the judgment of the Court, whether they present any obstruction to the granting of the prayer of said petition, and praying the direction of the Court, and the protection of its decree as to the course they should pursue." It was then stated, that Albertine Marie Louise Fontain and Henrietta Fontain are domiciled in the kingdom of Prussia, and that by the laws of that kingdom the disability of nonage, or infancy, does not terminate until the subject of such disability shall have completed the twenty-fourth year of his or her age, and that neither the said Albertine Marie Louise Fontain, nor the said Henrietta Catherina Fontain, has attained the age of twenty-four years. To this answer was submitted two judicial acts bearing upon the question, which had been entered into or obtained by the said Moritz William Fontain, and which were evinced by certificates annexed and made part of the answer. It was also stated that no refunding bond would be required, as the estate was sufficient. The judicial acts exhibited were as follows:—

"At the request of Moritz Wilhelm Fontain, of this town, gentleman living on his rents, it is hereby certified and attested that, according to the common law of the Prussian estates, Pars II. tit. 2, §§ 168, 156, 154, the father enjoys the usufruct, and is the administrator of property owing to his children as long as they live under his paternal authority. And it is further certified that the aforesaid prescription of law is also concerning every property of the children which they acquire by inheritance, legacies, or otherwise, provided always that the testator did not expressly make the clause that the father shall not have or enjoy the usufruct of such legacy." Then followed the attestation:—

"Be it known, that, at the request of Moritz Wilhelm Fontain, Esq., the father of Miss Albertine Marie Louise Fontain, born at Rheda, on the 9th of April, 1826, the said Miss Albertine Marie Louise Fontain, by these presents is legally pronounced to be of full age, the said request being previously carefully examined according to the jurisprudence of the common law of Prussia, Pars II. tit. 18, § 715, and granting thereon this certificate, it is further attested that this pronunciation to be of full age, is of the same validity in law, as if she, in fact, had attained the real age of majority."

A copy of the power of attorney was attached to the petition.

It was argued by Mr. *F. Hubbell,* for the petitioners, that as to the shares of Frederick and Wilhelm there could be no question, but that they are entitled to receive their shares; they are both *sui juris* by the laws, as well of Pennsylvania as of their respective domiciles. That a doubt had been suggested on the construction of the will as to the time when the principal and accumulations of the legacy became payable to the legatees, whether when the youngest child became twenty-one, or when she shall become twenty-four years of age. It is not conceded on the part of the petitioners that there is the slightest ambiguity on this point. The will is the will of a citizen of the United States, the property which is its subject is wholly within the United States, and it is written in the English language. Were the language of the will not too plain for doubt, these circumstances of his situation would lead to the conclusion that the words "arriving at full age" referred to that event as defined by the law of Pennsylvania. But the context makes this construction irresistible, as he directs that the fund shall accumulate "until the youngest child living of my said nephew shall arrive at the age of twenty-one years." It is true, in designating the

period of distribution, he alters his language, and declares that it shall be "on the youngest child living of my said nephew arriving at full age." Why did he select the age of twenty-one years for the limit of the period of accumulation? Obviously for no other reason than because that was the age of legal majority by the terms of the code under which he lived. We may assume that the shares of the two sons were distributable when the youngest child arrived at twenty-one. As to the share of the eldest daughter, it is equally clear.

The question of the disability to distribute after the youngest child had arrived at twenty-one years of age, lay not in the restrictions of the will, but in the personal status of the distributee. This personal status of the eldest daughter by the laws of Pennsylvania, is that of majority, and also by the laws of Prussia; by the act of emancipation which her father performed, she has attained her majority there.

The only difficulty presented by the case, is in regard to the share of Henrietta, who has not arrived at the age of twenty-four years, which is the legal majority at the place of her domicile, and has not been emancipated by any act of her father. If the youngest daughter be not entitled to this money by the laws of the United States, the income of it is the father's from the time she attained twenty-one until she arrived at the age of twenty-four. This, then, is an important question: Will the executors be justified in paying it to her under her power of attorney? We maintain they will.

When Henrietta gives a power of attorney, as she has done in this instance, to a person residing in Philadelphia, to collect a debt due to her by a person residing in Pennsylvania, she contracts with the person owing the debt that the payment to the agent shall be a full acquittance of her demand. She then, by giving this power of attorney, makes a contract to be performed or executed in the United States. The law of the United States is then the *lex loci contractus aut actus*, and governs as to the ability or disability, and establishes the present status of the parties to the contract. Nothing is better settled than this; particularly as concerns the disability of minority.

Hub. Prælecter. tom. p. 589: "Contracts are performed according to the laws of the place where the contract was made, &c.—and that law is to be affirmed whether it pertains to the form or substance of the contract."

Grotius, b. 2, c. 4, § 2, p. 244, in treating on the ages of majority, and promises made by minors, says: "Civil laws, for very

good reasons, pronounce some promises made by minors to be void, &c., but these effects belong to the civil law, and have nothing in common with the law of nature and nations; therefore, if a foreigner contract with a citizen, he will be held by those laws (i. e. of the place of contract), because he who contracts in any place is subjected to the laws of that place, as if a temporary subject."

He also cited Male *v.* Roberts, 3 Esp. 163; 1 Vesey, 298; 2 Kent Comm. ed. 1848, 458; Story's Conf. of Laws, § 103; Andrews *v.* Pond, 13 Peters, 65; Allshouse *v.* Ramsey, 6 Whart. R. 331.

It was also contended, as the will was made in Pennsylvania, the testator resided there, and its construction is to be governed by the *lex loci contractus aut actus.* This law defines the period of majority to be twenty-one years of age. What is to give it another meaning? The legatees, it will be said, resided in a foreign country; that is true, but there is no direction in the will that it should be remitted to them there. On the contrary, the will recommends that his nephew should change his domicile by coming to the United States to reside. A foreign guardian would not be admitted to any rights in this state: Story's Conf. of Laws, ch. 13; Act 29 March, 1832, Purd. 885. But the father claims an estate in the property of his daughter; the usufruct from the time she was twenty-one years of age until she attains twenty-four. This is a material modification of the bequest, and, if permitted, made by the law of the legatee's domicile.

Mr. *M'Call,* for the executors, said their only object was to claim ample protection. That Henrietta Catherina Fontain, the youngest child, was but twenty years of age; that by the law of her domicile, of origin and residence, she will not be of *full age* until the 11th of January, 1852. Until that period, the law of her domicile declares her to be a minor, and incapable of making a valid contract. It gives to her father, while she lives under his authority, the usufruct of her property and the administration of her estate. Hence the question arises, can distribution now be made of the accumulated fund or any part of it?

It is contended that upon a proper construction of the will of Mr. Kohne, no distribution, either general or partial, can be made until the youngest child shall arrive at *full age,* according to the laws of her domicile. It is clear the testator had in view but one

distribution of the accumulated fund. If, therefore, it is suspended as to the youngest child, it is as to all the children.

If the fund is now distributed, the result is that the portion of Henrietta must go, *not* into her hands, but into the hands of her father. Did Mr. Kohne mean this? We think not. The division is directed to be made *to* and *amongst the children.* Mr. Kohne therefore intended that the youngest child should not receive her portion of the accumulated fund, any more than the corpus of the canal loan, until that child should be capable of full dominion over the property. He fixes the period of emancipation as the period of distribution. By *full age,* he means the age which the law has fixed for the exercise of full rights of ownership.

But what law—the law of Pennsylvania or the law of Prussia? I answer, the law of her domicile, whatever that might be. The deceased knew of the domicile of the children; he knew the funds would be remitted there; it is presumable he was conversant with the laws of Prussia, and that a child did not attain full age at twenty-one.

The laws of Pennsylvania, and the law of the domicile of the claimant, are in conflict. Which is to govern? An important and novel question, novel in our jurisprudence, is thus presented.

The question here is not whether the Courts of Pennsylvania will enforce a contract made in Pennsylvania, by a citizen of this state, with a Prussian minor, in ignorance of the law of Prussia, which fixes the age of majority at twenty-four years. No domestic rights are involved, calling for protection. No contract has been made by a Prussian minor with one of our citizens, which policy and justice combine to enforce. It is simply a question of time for the payment of a legacy. The petitioners are all foreigners, all domiciled abroad. By the law of their own domicile, the youngest of them is not of full age. They claim distribution though she is not. That their law should govern the question of the personal status of the youngest child, is the principle laid down by the most eminent jurists and writers on the conflict of laws.

· D'Argentre, one of the most celebrated writers that have treated these questions, so lays down the principle. Rodenburgh, who was a Judge of the Supreme Court at Utrecht, in the middle of the seventeenth century, concludes, that an inhabitant of Holland, minor by the laws of that province, but major by the laws of Utrecht, cannot make a valid contract at Utrecht.

Stackmans, of Brabant, who was Professor in the University of Louvain, and afterwards a Judge of the Supreme Court of Brabant,

holds equally strong language with his contemporary Rodenburgh: Story, § 51, a. Boullenors, the most celebrated writer on these subjects whom the last century produced, lays down the rule in these broad terms: When the personal statute of a person's domicile is in apposition with the personal statute of the place where his property is situate, the personal statute of the domicile will prevail: Livermore, p. 57. The learned Froland, too, lays down the doctrine that a personal statute not only exerts its authority in the place of the domicile of the party, but its provisions follow the party and accompany his person in every place where he goes to contract: Story, 51, a. Archerlin, Pothier, and the modern lawyers, lay down the rule in the broadest manner: Story's Conf. of Laws, ch. 4, on the capacity of persons.

The case which has the strongest affinity to the present of any that I have seen, is Barrera v. Alpuente, 18 Martens' Louis. Rep. 69. The rule, say the Court, is, that the laws of the domicile of origin govern the state and condition of the minor, into whatever country he removes. In this case it must be observed that the laws of the domicile or origin were regarded as governing the question of majority.

It is submitted, therefore, that the personal status of Henrietta Fontain must be decided by the law of her domicile, and not by our laws.

The authority of Judge Story, § 103, Conf. of Laws, is cited on the other side, for the position that in questions of minority or majority, the *lex loci contractus aut actus* is to govern. But a reference to the previous sections of this work, upon which this general summary is based, has relation to foreign minors when contracts are made by them.

Mr. *Hubbell*, in reply.—The general law is freely admitted that the *lex domicilii* is to govern as to the personal *status* of a party; but is with this broad exception, that, where a contract is made by a party, in a country other than his domicile, his personal abilities and disabilities are to be governed by the *lex loci contractus aut actus*. This exception is not founded, as the opposite argument supposes, upon any fraud in the infant, or other subject of disability, but upon the broad ground of general policy, independent of any particular consideration of special circumstances.

With respect to the case cited from 18 Martens' Rep. 69, in the argument for the executors, Judge Story says of it, Conflict of Laws, § 77: " But the decision may perhaps be thought to rest on

its own peculiar circumstances." The case now under considera-
tion presents an entirely different question from that decided in
18 Martens' Rep. That acts and contracts are to be governed by
the *lex loci contractus aut actus*, and not of the domicile, has been
repeatedly decided by the same Court: 17 Martens' Rep. 596; 11
Ib. 464; 16 Ib. 192.

The term contract is not to be received in a restricted sense,
but includes all the subordinate parts that enter into its composi-
tion; and when a power of attorney is given, empowering an
attorney to enter into contracts in a foreign country, that power
of attorney forms part of the contracts made in pursuance of it.

The opinion of the Court was delivered by

KING, President.—The testator, Frederick Kohne, was for many
years a citizen of Pennsylvania and an inhabitant of Philadelphia,
where he executed his last will on the 28th of April, 1829, and
where he subsequently died. Among the legacies in this will is
found the following : [Here his honour read the bequest as contained
in the report.] Moritz Fontain, at the time of the testator's death,
had five children, one of whom is since deceased intestate, unmarried,
and without issue. The surviving children are Frederick, now of
the age of thirty years, Wilhelm, of the age of twenty-seven years,
Albertine Marie Louise, of the age of twenty-three years, and
Henrietta Catherina, of the age of twenty-one years and upwards.
These four persons have all united in a power constituting John C.
Lang, of this city, their attorney in fact, to demand and receive
their legacies, and it has been at his instance that the proceeding
has been brought before this Court.

If the case was without further complication, it would be one of
the extremest simplicity, and the decree of distribution prayed for
would follow of course. But a difficulty is supposed to present
itself, because these legatees are subjects of the kingdom of Prussia,
and at this time actually domiciled therein ; and because, by the
laws of that kingdom, the minority of a child continues until he or
she may arrive at the age of twenty-four years ; the usufruct of the
child's property, and the administration of its estate, remaining in
the interval with the father. No dispute exists either as to the
fact of the petitioner's domicile, or as to the Prussian law, in rela-
tion to the time when a child becomes emancipated from the paternal
authority ; nor as to the interest a father possesses, under that law,
in the estate of his minor child.

The first question for adjudication is one involving the construc-

tion of this bequest, viz. whether the fund bequeathed is distributable when the youngest child of Moritz Fontain has actually attained the age of twenty-one years, or whether such distribution is to be postponed until such youngest child shall have arrived at *full age*, according to the law of its legal and actual domicile, which in this instance is the age of twenty-four years.

The complainants, who ask immediate distribution, found their claims on what seems to them the intention of the testator, as expressed on the face of his will. And certainly, if we confine ourselves to the instrument, the position taken by the complainants seems the necessary one. The source from which the legacies bequeathed these complainants come, is the sum of three thousand dollars, directed to be annually set apart and invested, with all accumulations thereof, until the youngest child of the testator's nephew "shall arrive at twenty-one years." Which annual sums and accumulations are to be equally divided among the children of his nephew living, when the youngest thereof shall "arrive at full age." The phrases "arrive at twenty-one years" and "arrive at full age" are synonymous, and would convey to the mind identically the same idea in any question in which our tribunal were acting on our own citizens; and they must always be so considered, at least *primâ facia*, when found in such an instrument as the present, executed by one of our own citizens, within our own territory, and operating on property exclusively within our own jurisdiction. The theory of the opposite argument is, that the testator having been a native of Prussia, must have been conversant with the laws of that kingdom, and therefore meant to use the phrase "full age," not in its Pennsylvania meaning, the age of twenty-one years, but in its Prussian sense, the age of twenty-four years; especially in regard to his Prussian legatees. But this theory rests solely on one fact, to wit, that Mr. Kohne was by birth a Prussian. To this fact two assumptions have been associated, viz. that Mr. Kohne was conversant with the Prussian law, and that he had that law in contemplation, in employing the phrase "of full age" in his will. Now it happens that the wars of the French revolution, and the final overthrow of the Napoleon dynasty, had, since his departure from Westphalia, more than once changed the government of his native country, and altered its civil code. If, therefore, this question is to be solved by the doctrine of probabilities, the weight of the argument seems to be more in favour of the idea, that in using these words, he had in view their value in the country of his adoption, where his fortune was realized, and towards which he manifested his affection, by

magnificent donations to her public charities: rather then their meaning in a country from which he had permanently separated himself, and with whose existing laws and institutions he had no further connexion. But independent of this sort of speculative reasoning, the face of the will shows that he had in his mind the Pennsylvania notion of full age exclusively. He directs the accumulating fund to continue only until the youngest child of his nephew should reach the age of twenty-one years; the annual appropriation of $3000 then stops. No provision is made for further increase of the fund, either by the addition of new capital or by the accumulation of the interest arising from the then existing fund. This is exactly the state of things we should expect to see, on the arrival of the period at which the testator intended the division of his bequest to take place. If he had had in contemplation, that three years should elapse, after his youngest grand niece had arrived at twenty-one, before she should receive her own proportion, and before her elder brothers and sisters should receive theirs, would not such an eccentric intention have been distinctly expressed? Would not some provision have been made, directing the disposition of the accruing interest during that time, either for the immediate benefit of the legatees, or for adding it to the general fund? On the contrary, wherever accumulation of interest is spoken of in the bequest, it is spoken of in connexion with the annual additions made to the capital; manifesting, most clearly, that the two were inseparably associated in the mind of the testator, and that when the addition of new capital by the annual appropriation of $3000, should cease, he intended that the accretions from accumulating interest were alike to terminate, and the aggregate fund divided among his legatees. In all such inquiries as the present, we are solely in pursuit of the intention of the testator; that alone is the point to be arrived at. To accomplish this result, we are to search for such intention in all the parts of a bequest. To dwell on isolated phrases, without considering them in all their connexions is, of all other courses, the one most likely to divert the mind from that enlarged and philosophical manner of discussing such questions which is the only one calculated to bring us to their true solution. It is from such a process of reasoning that we are brought to the conclusion that the testator in this bequest has used the phrases "twenty-one years," and "full age," as pure synonymes, and that of consequence, the period for the division of this fund among the legatees has arrived. This conclusion disposes of the case as respects the portions of Frederick, Wilhelm, and Albertine, the two

former having actually reached twenty-four years of age, and the latter being now *sui juris* by virtue of an action of emancipation, executed by her father according to the Prussian law.

The remaining point for adjudication, is, whether the power of attorney, under which Mr. Lang claims to represent Henrietta Catherina Fontain is an instrument, executed by a party legally competent to make it. It is admitted that she is a Prussian subject, actually domiciled in that kingdom, and that, by the laws of her domicile, she is still under a state of tutellage, and legally incapable of executing such an instrument, if intended to operate there. What then is her status in reference to the question of her legal capacity to execute such an instrument in Prussia, intended to operate on PERSONAL estate in this commonwealth?

There are few subjects, arising under the conflict of laws, which have produced more elaborate discussion than laws regulating the capacity, state, and condition of persons. The whole subject has been very fully discussed by Judge Story, in his learned Treatise on the Conflict of Laws, where the studious inquirer will find ample materials to enable him to pursue his investigations of it. We, however, will confine our consideration to the precise *question* before the Court, which is, whether a minor, actually domiciled in a foreign country, and who, by the laws of that country, is legally incapable of executing any instrument having any legal value there, can execute therein such an instrument legally efficacious on his personal property in this commonwealth. Or, to state the question in another form, whether we will regard the laws of foreign countries, regulating the relations of minority and majority, in cases in which a foreign minor, who still retains his foreign domicile, presents himself as a party in our courts to obtain the recovery of personal property in this commonwealth. The continental authorities on the subject are very fully considered and discussed by Judge Story, who sums them up by stating that, with but few exceptions, they agree in this position: "That a person who has attained his age of majority by the laws of his native domicile is to be deemed everywhere of the same; and on the other hand, that a person who is in his minority, by the laws of his native domicile, is to be deemed everywhere in the same state and condition. Thus, for example, if, by the laws of the place of his original domicile, a person cannot make a will of his property before he is twenty-one years; he cannot, if under that age, make a valid will, even of such property as is situate in a place where the laws allow persons of fourteen years to make a will of the like property:" § 52. It may be appropriately re-

marked that the learned author is here considering cases of the capacity or incapacity of persons arising from the domicile of origin, and where there has been no subsequent change of domicile:" § 55. And so far as this doctrine has been applied to acts of minors, executed in their native domicile, which they have never changed, and acting exclusively on personal property, it has met with general favour. When sought to be applied in reference to lands, which are properly regulated by the laws of the *situs*, it is not received. The rule being "that no personal statute extends to lands situate elsewhere." *Non tamen statutem personale sæpe regulariter extendet ad bona immobilia alibi sita.* In reference to the case before the Court, and the application thereto of those principles, it is important to be borne in mind that the act here impeached as invalid is a power of attorney, executed by a minor in her native country, and where she is now actually domiciled, authorizing an attorney, so constituted by her, to receive her personal inheritance in this country ; and that her right to do so is disputed by the executors of the will under which she claims the inheritance, in consequence of an intervention by her father, claiming as well the administration as the usufruct of the estate under the laws of her native and actual domicile. And finally, that the estate is all personal, which, as well by our laws as by those of her country, follows the *situs* of the owner.

This state of things brings the case apparently within the first of the categories of Judge Story, in which he recapitulates the continental doctrines best established. That is to say, "acts of a person done in the place of his domicile, in regard to property situate therein, which are to be judged of by the laws of this place, and which will not be permitted to have any legal effect elsewhere than they have at that place." In point of actual fact, it is true that the minor's property in this instance is within our actual jurisdiction; but as personal property always follows the *situs* of the owner, this fact does not vary the proposition. The case then seems brought within the narrowest limits which any jurist who has admitted the doctrine of the extraterrial force of personal statutes has ever desired to restrain it. And to this extent it is part of the law of Pennsylvania, because it is part of the *jus gentium*, which forms a part of our code. To this extent I also understand the doctrine as conceded by the learned counsel for Henrietta Catherina Fontain. But his concession is accompanied by the assertion of an exception to the rule, broad enough, as he supposes, to cover his case. He asserts that when Henrietta Catherina Fontain gave a

power of attorney to Mr. Lang to collect this debt due to her by a person residing in Pennsylvania, she contracted with the person owing the debt, that the payment to the agent should be a full acquittance of her demand. That this contract is to be executed in Pennsylvania, and that the law of Pennsylvania is the "*lex loci contractus aut actus,*" and governs as to the ability or disability, and establishes the personal status of the parties to the contract. That contracts are to be performed according to the laws of the place where they are made, is an axiom of universal legal truth. "*Locus contractus reget actum,*" is alike the rule of law and reason.

But the second branch of the doctrine contended for, to wit, that a contract made by an admitted minor in his domicile, where it is a nullity, to be executed in another country, where he would not be considered as a minor, may be enforced in the latter, is a question by no means so clear. It is directly at variance with the second proposition which Judge Story deduces from a comparison of the opinions of foreign jurists, and which he asserts to be, "that the personal capacity or incapacity attached to a party by the law of the place of his domicile is deemed to exist in every country, so long as his domicile remains unchanged, even in *relation* to transactions in any foreign country where they might be otherwise obligatory:" (§ 65.

If this doctrine is disputable, as it is supposed to be in the argument, it is not actually necessary to be decided in order to the determination of this case. And this, because the power of attorney executed by Henrietta Fontain is in no respect a *contract* with the executors of Frederick Kohne. What is a contract, in the general sense of the term? It is a mutual agreement made between two or more parties. It is express where the terms of the agreement are expressed by the parties themselves. It is implied from the reason and justice of a particular transaction, and which, therefore, the law presumes that every man undertakes to perform. In this case, no such express contract as that asserted, exists. The executors of Mr. Kohne have, on the contrary, refused to negotiate with Henrietta Fontain, because they regard her as incapable of making any binding engagement. Had they admitted her competency, and paid her legacy to her attorney, the argument founded on the idea of a contract might have had some colour. Express contract, then, there is none. An implied contract is necessarily founded on a present, perfect, and absolute right, which reason and justice requires should be enforced in favour of the party possessing it, against him who refuses to do him justice. But we have said that

no such present, perfect, and absolute right exists in Henrietta, by reason of her minority.

Hence the substratum on which an implied contract could only be founded, fails, and the superstructure falls with the removal of the foundation. The subtlety of this argument is apparent from its operation on the principle we have heretofore asserted. We have said, that according to our laws, in common with those of the civilized world, questions of minority and majority, in all controversies respecting personal estate, are to be determined according to the laws of the country in which the alleged minor has his actual domicile, whether natural or acquired. If, after announcing this principle, as an actual rule of our jurisprudence, we should say that such a minor is competent to execute in his own domicile a power of attorney, legally adequate to operate on his personalty here, we nullify our own rule for every practical purpose, making it a barren abstraction, and inefficacious. We at one breath declare the same party capable and incapable, and by a simple change in the mode of procedure, we recognise a legal capacity which we have before repudiated; a system of jurisprudence which would result in such inconsistencies, could scarcely claim with justice the proud title of the perfection of human reason, which jurisconsults claim for their elevated science.

In the final conclusion we have thus arrived at, we have in part differed, and in part concurred, with both the parties litigant. We agree with the complainants, that the legacies of Mr. Kohne to the children of Moritz Fontain are all immediately payable, and we accordingly decree such payment to Frederick, Wilhelm, and Albertine. But we also agree with the respondents, that Henrietta not having reached full age, according to the laws of her native and actual domicile, labours under a personal incapacity, which disqualifies her from suing in this Court as a person *sui juris*. As the proceedings, as respects her, are still open for further directions, an application on her behalf may be hereafter made. Perhaps her father may see proper to execute in her favour a similar act of emancipation to that which gives her elder sister a standing in Court. If that is not done, an application may be made to the Court, either to order the transmission of her estate to her legal guardian or tutor, in Prussia, or, perhaps, to constitute one here, who may receive and retain, or transmit it under our directions. Our action in these respects has not been asked; and therefore it seems best to leave any direct expression of opinion in regard thereto, until such action is solicited.